**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Tienna Smith*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| TIENNA SMITH,<br><br>                   Plaintiff,<br><br>          v.<br><br>EXCEL HOME CARE,<br>EXCEL COMPANION CARE LLC,<br>EXCEL COMPANION CARE INC.,<br>HELP AT HOME,<br>HELP AT HOME, LLC, *and*<br>MICAH CLARK,<br><br>                   Defendants. | Civil Action No._____<br><br>**Complaint for Declaratory Judgment,<br>Injunctive Relief *and* Damages**<br><br>Jury Trial Demanded |

### Nature of the Action

1. This is an action for relief from violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

2. Plaintiff Tienna Smith seeks declaratory and injunctive relief, actual damages, compensatory damages, liquidated damages, punitive damages, reinstatement, pre- and

post-judgment interest, reasonable attorneys' fees and costs of suit as remedies for Defendants' violations of her rights.

**Parties**

3.  Plaintiff Tienna Smith ("Ms. Smith") is an adult individual resident of Philadelphia County and a citizen of the Commonwealth of Pennsylvania.

4.  Defendant Excel Home Care is a fictitious business entity incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 400 Horsham Road, Suite 130, Horsham, PA 19044.

5.  Defendant Excel Companion Care LLC is a fictitious business entity incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 400 Horsham Road, Suite 130, Horsham, PA 19044.

6.  Defendant Excel Companion Care Inc. is a fictitious business entity incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 400 Horsham Road, Suite 130, Horsham, PA 19044.

7.  Defendant Help at Home is a fictitious business entity incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 400 Horsham Road, Suite 130, Horsham, PA 19044.

8.  Defendant Help at Home, LLC is a fictitious business entity incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 400 Horsham Road, Suite 130, Horsham, PA 19044.

9.  Defendants Excel Home Care, Excel Companion Care LLC, Excel Companion Care Inc., Help at Home and Help at Home, LLC are collectively referred to as "Excel Defendants."

10. Defendant Micah Clark is an adult individual and resident of the Commonwealth of Pennsylvania with a principal place of business located at 400 Horsham Road, Suite 130, Horsham, PA 19044.

11. At all relevant times, Defendants acted or failed to act through their agents, servants and employees, each of whom were acting within the course and scope of their employment.

12. At all relevant times, Defendants were "employers" and Ms. Smith was an "employee" within the meaning of the applicable law.

13. Defendants systematically and willfully violate workers' rights under the ADA, FMLA, Title VII and Section 1981.

**Exhaustion of Administrative Remedies Under Title VII and the ADA**

14. Plaintiff timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Philadelphia Commission on Human Relations ("PCHR") alleging violations of Title VII, the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").

15. Plaintiff's PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over her charges. After one year, Plaintiff will seek leave amend this complaint to assert her PFPO claims against Defendants.

16. EEOC issued Plaintiff Notice of Right to Sue Within 90 Days.

17. Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

**Jurisdiction and Venue**

18. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under the ADA, FMLA, Title VII and Section 1981.

19. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendants are subject to personal jurisdiction here.

20. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**Facts**

21. Ms. Smith is a 39-year-old Black woman of African American descent who was employed by Defendants as a full-time home health care employee, earning $9.00 per hour, from approximately March 8, 2019 until her unlawful termination on or about August 15, 2019.

22. At all relevant times, under the meaning of the ADA, Ms. Smith (1) suffered from a "disability" (ruptured breast tissue, breast abscess) that substantially limited one or more life activities and required her to seek medical treatment, including surgery; and (2) was a "qualified individual" able to perform the essential functions of her job as a home health care employee.

23. At all relevant times, Ms. Smith worked to the best of her ability, never knowingly violated any of the employer's rules, regulations or policies, and her work was satisfactory and met or exceeded the employer's expectations.

24. On or around July 6, 2019, Ms. Smith was sexually assaulted by one of Defendants' customers resulting in Plaintiff suffering ruptured breast tissue and breast abscess. Defendants had prior notice of the customer's propensity to commit sexual assault but did nothing to prevent the assault from happening to Ms. Smith.

25. Plaintiff went out of work intermittently between July 2019 and August 2019.

26. On or around August 8, 2019, due to her breast injuries, Ms. Smith requested a reasonable accommodation from Defendants pursuant to her doctor's orders, which included restrictions on lifting and certain physical activities until her next appointment scheduled for August 22, 2019.

27. On or around August 15, 2019, immediately after Ms. Smith made her reasonable accommodation request, Defendants fired her.

28. Plaintiff's request for reasonable accommodations was reasonable because they were feasible and plausible on their face and would have been effective in meeting Plaintiff's needs.

29. Plaintiff's requested reasonable accommodations would have allowed Plaintiff, an employee with a disability, an equal opportunity to enjoy the benefits and privileges of employment that employees without disabilities enjoy.

30. Plaintiff's requested reasonable accommodations would not have caused an "undue hardship" on Defendants.

31. Defendants failed to initiate an interactive process with Plaintiff to determine appropriate reasonable accommodations.

32. Defendants failed to offer Plaintiff other work.

33. Defendants unreasonably denied Plaintiff's request for reasonable accommodations.

34. Defendants' generalized conclusion that Plaintiff's reasonable accommodations would cause an "undue hardship" were insufficient to support a claim of undue hardship.

35. Defendants' claim of undue hardship was not based on any individualized assessment of current circumstances that show that a specific reasonable accommodation would cause significant difficulty or expense.

36. Defendants are unable to show the nature and cost of the accommodation needed.

37. Defendants' claim of undue hardship was clearly pretextual based on the overall financial resources of the facility making the reasonable accommodation; the number of persons employed at this facility; and the effect on expenses and resources of the facility.

38. Additionally, Defendants' claim of undue hardship does not account for Defendants' overall financial resources, size, number of employees, and type and location of facilities of the employer.

39. Plaintiff's request for reasonable accommodations would not have impacted the operation of the facility she was working at in a way that would cause an undue hardship on Defendants.

40. Defendants interfered with, restrained and/or denied Plaintiff's exercise (or attempt to exercise) her rights under the ADA and FMLA.

41. Defendants improperly refused to authorize Plaintiff's request to return to work with reasonable accommodations under the ADA and FMLA.

42. Defendants failed to respond to Plaintiff's numerous inquiries concerning her rights and responsibilities under the ADA and FMLA.

43. When Plaintiff made a diligent, good faith effort to timely provide a medical certification, Defendants failed to give Plaintiff additional time to provide the certification and/or otherwise failed to engage in the interactive process.

44. Plaintiff provided a complete and sufficient medical certification that Defendants failed to accept.

45. Defendants improperly used Plaintiff's requests for reasonable accommodations under the ADA and FMLA as a deciding factor or factors in disciplining and firing Plaintiff.

46. Defendants discriminated against Plaintiff for opposing and/or complaining about Defendants' unlawful practices under the ADA and FMLA.

47. Ms. Smith continues to suffer severe emotional distress related to the unlawful conduct she experienced by Defendants.

48. Defendants discriminated against, harassed and retaliated against Ms. Smith in the terms and conditions of her employment because of race (African American), color (Black), sex (Female), and disability (ruptured breast tissue, breast abscess).

49. Defendants subjected Ms. Smith to a hostile work environment based on race (African American), color (Black), sex (Female), disability (ruptured breast tissue, breast abscess) and retaliation.

50. Defendants retaliated against Ms. Smith because she reported or otherwise opposed Defendants' illegal conduct.

51. Defendants retaliated against Ms. Smith because she requested reasonable accommodations.

52. Plaintiff claims a continuous practice of discrimination, harassment and retaliation and makes all claims herein under the continuing violations doctrine. Defendants exhibited a pattern and practice of not only discrimination, but also retaliation.

53. Plaintiff claims unlawful constructive and/or unlawful actual discharge.

54. Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

55. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensations which such employment entails; as well as past and future pecuniary losses, emotional distress, humiliation, suffering, inconvenience, loss of enjoyment of life activities, and other non-pecuniary loses.

56. Plaintiff is entitled to reinstatement, liquidated damages, attorneys' fees and costs.

57. Because Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff also claims punitive damages against Defendants.

58. The above are just some examples of the unlawful discrimination, harassment and retaliation that Ms. Smith suffered by Defendants.

**Causes of Action**

**Count I**
**Disability Discrimination/Retaliation**
**Americans with Disabilities Act, 42 U.S.C §§ 12101 et seq.**
**Plaintiff v. Excel Defendants**

59. Plaintiff repeats and realleges every allegation made in the above paragraphs of this complaint.

60. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

61. Moreover, the ADA contains an anti-retaliation provision, which provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

62. The ADA further provides that "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

63. Furthermore, it is well-settled law that, under the ADA, employers have an obligation to provide a reasonable accommodation for a disabled employee and that the failure to provide a reasonable accommodation to an employee's known disability is a form of discrimination. 42 U.S.C. § 12112(b)(5)(A).

64. It is undisputed that (1) Plaintiff's ruptured breast tissue, breast abscess diagnosis qualifies as a disability; (2) Plaintiff's experience and performance establish she was qualified; and (3) Plaintiff was terminated (4) a short time after requesting a reasonable accommodation related to her ruptured breast tissue, breast abscess diagnosis and related reasonable accommodation requests.

65. Defendants cannot show a legitimate nondiscriminatory reason for its actions and any reasons proffered by Defendants for terminating Plaintiff's employment are pretextual and can readily be disbelieved.

66. Defendants engaged in an unlawful discriminatory practice by discriminating and retaliating against Plaintiff because of her disability and refusing to provide Plaintiff with a reasonable accommodation.

67. Defendants coerced, intimidated, threatened and interfered with Plaintiff's exercise and enjoyment of her rights granted under the ADA.

68. Defendants fired Plaintiff on account of her having exercised and enjoyed her rights granted under the ADA.

69. Because of Defendants' violations of the ADA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunity; harm to her business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and all additional general and equitable relief to which Plaintiff is entitled.

**Count II**
**FMLA Retaliation**
**29 U.S.C. § 2615(a)(2)**
**Plaintiff v. Excel Defendants**

70. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

71. The FMLA protects employees from retaliation.

72. Defendants violated the FMLA by retaliating and discriminating against Plaintiff for exercising her rights under the FMLA by, *inter alia*:

    a.  Failing to continue to contribute to Plaintiff's health benefits while she was placed on involuntary medical leave;

    b.  Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her duties and return to work at the end of her FMLA leave;

    c.  Retaliating against Plaintiff for attempting to exercise her rights under the FMLA;

    d.  Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;

    e.  Failing to have in place proper FMLA policies, procedures and compliance; and,

    f.  Otherwise violating the FMLA.

73. Defendants' violations of the FMLA were grossly negligent and/or willful.

74. As a direct and proximate cause of Defendants' willful violations of the FMLA, Defendants are liable for Plaintiff's compensation and benefits lost by reason of the violations, for other actual monetary losses sustained as a direct result of the violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff. See 29 CFR 825.300 (e).

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with the FMLA; (2) an award of reasonable attorneys' fees and costs of this action in accordance with the FMLA; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an award of liquidated damages in accordance with the FMLA; (5) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the FMLA; and (6) all additional general and equitable relief to which Plaintiff is entitled.

**Count III**
**Title VII Disparate Treatment**
**42 U.S.C. § 2000e-2**
**Plaintiff v. Excel Defendants**

75. Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

76. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for

an employer . . . to discriminate against any individual with respect to [her]

compensation, terms, conditions, or privileges of employment, because of [her] race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

77. Title VII further provides that "un unlawful employment practice is established when the

complaining party demonstrates that race, color, religion, sex, or national origin was a

motivating factor for any employment practice, even though other factors also motivated

the practice." 42 U.S.C. § 2000e-2(m).

78. Defendants engaged in unlawful employment practices prohibited by Title VII by

intentionally discriminating against Plaintiff with respect to her compensation, terms,

conditions, training and privileges of employment because of her race, color, sex, and

retaliation.

79. Defendants subjected Plaintiff to adverse tangible employment actions—defined as

significant changes in Plaintiff's employment status, discipline, denial of training, failure

to promote, reassignment with significantly different job responsibilities, and decisions

causing changes in significant changes in her employment benefits.

80. Plaintiff's protected characteristics played a determinative factor in Defendants'

decisions.

81. Defendants cannot show any legitimate nondiscriminatory reasons for their employment

practices and any reasons proffered by Defendants for their actions against Plaintiff are

pretextual and can readily be disbelieved.

82. Alternatively, Plaintiff' protected status played a motivating part in Defendants'

decisions even if other factors may also have motivated their actions against Plaintiff.

83. Defendants acted with the intent to discriminate.

84. Defendants acted upon a continuing course of conduct.

85. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages,

including, but not limited to past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following

relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an

award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an

award of pre- and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count IV**
**Title VII Hostile Work Environment**
**42 U.S.C. § 2000e-2**
**Plaintiff v. Excel Defendants**

86. Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

87. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

88. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

89. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

90. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

91. The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

92. Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

93. The harassing conduct directly refers to Plaintiff's race, color, sex and retaliation.

94. Defendants delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

95. Harassing conduct filled the environment of Plaintiff's work area.

96. Defendants knew that the harassing conduct filled Plaintiff's work environment.

97. Harassing conduct occurred daily.

98. Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

99. Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

100. The conduct was both severe and pervasive.

101. The conduct was physically threatening and humiliating.

102. The conduct unreasonably interfered with Plaintiff's work performance.

103. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

104. Defendants provided a futile avenue for complaint.

105. Defendants retaliated against Plaintiff for her complaints.

106. Defendants acted upon a continuing course of conduct.

107. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an

award of pre- and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count V**
**Title VII Retaliation**
**42 U.S.C. § 2000e-3**
**Plaintiff v. Excel Defendants**

108.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

109.     Title VII protects employees from retaliation for attempting to exercise their

rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
> (a) Discrimination for making charges, testifying, assisting, or
> participating in enforcement proceedings. It shall be an unlawful
> employment practice for an employer to discriminate against any of
> his employees . . . because [she] has opposed any practice made an
> unlawful employment practice by this subchapter, or because [she]
> has made a charge, testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under this subchapter.

110.     The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68

(2006) held that a cause of action for retaliation under Title VII lies whenever the

employer responds to protected activity in such a way that "might have dissuaded a

reasonable worker from making or supporting a charge of discrimination."

111.     Informal complaints and protests can constitute protected activity under the

"opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d

331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal

protests of discriminatory employment practices, including making complaints to

management.").

16

112.     Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

113.     Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

114.     "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

115.     An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

116.     Here, Defendants discriminated against Plaintiff because of her protected activity under Title VII.

117.     Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of race, color, sex and retaliation was violated.

118.     Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

119.     There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity.

120.     Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

121.     Defendants acted upon a continuing course of conduct.

122.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

123.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an

award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an

award of pre- and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count VI**
**Section 1981 Disparate Treatment**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

124.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

125.     Section 1981 prohibits race discrimination in the making and enforcing of

contracts. 42 U.S.C. § 1981.

126.     The Third Circuit has stated that "a wide panoply of adverse employment actions

may be the basis of employment discrimination suits under Title VII of the Civil Rights

Act and 42 U.S.C. § 1981." Clark v. Twp. of Falls, 890 F.2d 611, 618-19 (3d Cir. 1989).

127.     The Third Circuit has treated Section 1981 claims and Title VII claims

interchangeably with respect to adverse employment actions. See, e.g., Barnees v.

Nationwide Mut. Ins. Co., 598 Fed. Appx. 86, 90 (3d Cir. 2015); Storey v. Burns Int'l

Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (a Title VII case); Thompson v. City of

Waco, 764 F.3d 500, 503 (5th Cir. 2014) (a Section 1981 case).

128.     Under Section 1981, both employers and individual employees can be liable for

discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir.

2001) ("Although claims against individual supervisors are not permitted under Title VII,

this court has found individual liability under § 1981 when [the defendants] intentionally

cause an infringement of rights protected by Section 1981,  regardless of whether the

[employer] may also be held liable."); <u>Al-Khazraji v. Saint Francis College</u>, 784 F.2d 505, 518 (3d Cir. 1986) ("employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable").

129.    Defendants violated Section 1981 by intentionally discriminating against Plaintiff in a serious tangible way with respect to her compensation, terms, conditions or privileges of employment.

130.    Plaintiff's race characteristics were a determinative or motivating factor in Defendants' employment actions.

131.    Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

132.    Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

133.    Defendants acted with the intent to discriminate.

134.    Defendants acted upon a continuing course of conduct.

135.    Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

136.    As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible
and intangible.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and prays for the
following relief: (1) actual damages; (2) compensatory damages in an amount consistent with
Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs
in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law;
(6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of
Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance
with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

**Count VII**
**Section 1981 Hostile Work Environment**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

137.    Plaintiff incorporates by reference each and every allegation made in the above
paragraphs of this complaint.

138.    The standards for a hostile work environment claim are identical under Title VII
and Section 1981. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir.
2005) ("Regarding [plaintiff's] hostile work environment claim, the same standard used
under Title VII applies under Section 1981."); Ocasio v. Lehigh Valley Family Health
Center, 92 Fed.Appx. 876, 879-80 (3d Cir. 2004) ("As amended by the 1991 Civil Rights
Act, § 1981 now encompasses hostile work environment  claims, and we apply the same
standards as in a similar Title VII claim.").

139.    While the standards of liability are identical under Title VII and Section 1981,
there is a major difference in the coverage of the two provisions: under Title VII, only
employers can be liable for discrimination in employment, but under Section 1981,

individuals, including other employees, can be liable for racial discrimination against an employee. See Cardenas, 269 F.3d at 268; Al-Khazarji, 784 F.2d at 518.

140.    Defendants subjected Plaintiff to harassment motivated by Plaintiff's race characteristics.

141.    Defendants' conduct was not welcomed by Plaintiff.

142.    Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive.

143.    Plaintiff believed her work environment was hostile or abusive as a result of Defendants' conduct.

144.    As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

145.    Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

146.    Defendants acted upon a continuing course of conduct.

147.    As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

**Count VIII**
**Section 1981 Retaliation**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

148.    Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

149.    The Supreme Court has held that retaliation claims are cognizable under Section 1981 despite the absence of specific statutory language. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

150.    The Third Circuit has indicated that the legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim. See, e.g., Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) ("[T]o establish a prima facie retaliation claim under Title VII [or] § 1981 … , [a plaintiff] must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action"); Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36

(D.N.J. 1995) (noting that with respect to retaliation claims, "The Civil Rights Act of 1991 extended § 1981 to the reaches of Title VII.").

151.     The most common activities protected from retaliation under Section 1981 and Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3) testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Section 1981. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity), overruled on other grounds by Burlington N. & S.F. Ry. Co. v. White, 126 S. Ct. 2405 (2006); Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (advocating equal treatment was protected activity); Aman v. Cort Furniture, 85 F.3d 1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provision "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed'"); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir. 1995).

152.     Here, Defendants discriminated against Plaintiff because of her protected activity under Section 1981.

153.     Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of race was violated.

154.     Plaintiff was subjected to a materially adverse action at the time, or after the protected conduct took place.

155.     There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity.

156.     Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

157.     Defendants acted upon a continuing course of conduct.

158.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of her protected activity.

159.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance with Section 1981; and (9) all additional general and equitable relief to which Plaintiff is entitled.

## Count IX
### Declaratory Relief Allegations

160.	Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

161.	A present and actual controversy exists between Plaintiff and Defendants concerning their rights and respective duties.

162.	Plaintiff contends Defendants violated her rights as complained of herein.

163.	Plaintiff is informed and believe that Defendants deny these allegations.

164.	Declaratory relief is therefore necessary and appropriate.

**WHEREFORE**, Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## Count X
### Injunctive Relief Allegations

165.	Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

166.	No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

167.	If this Court does not grant the injunctive relief sought, Plaintiff will be irreparably harmed.

**WHEREFORE**, Plaintiff seeks an order enjoining Defendants from engaging in the unlawful acts complained of herein.

### Jury Demand

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised by this complaint.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com

Dated: <u>March 9, 2021</u>                  *Attorneys for Plaintiff, Tienna Smith*